IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EVERFLORA CHICAGO, INC. | ) | Case No. 10-3659 |
| | ) | |
| Debtor. | ) | HONORABLE EUGENE R. WEDOFF |
| | ) | U.S. BANKRUPTCY JUDGE |
| | ) | |

**<u>AGREED FINAL ORDER GRANTING DEBTOR'S AMENDED MOTION TO EXTEND AUTHORITY TO USE MIDWEST BUSINESS CREDIT, LLC'S CASH COLLATERAL AND PROVIDING ADEQUATE PROTECTION</u>**

This matter came on for hearing on Debtor's Amended Motion to Extend Authority to Use Midwest Business Credit, LLC's Cash Collateral and Providing Adequate Protection (the "Amended Motion"); due and proper notice of the Motion having been given pursuant to Bankruptcy Rule 4001(c)(1) to counsel for Midwest Business Credit, LLC ("Midwest" or "lender"), the United States Trustee, all creditors, all entities that filed a UCC financing statement asserting a security interest in Debtor's property and all entities who have requested notice in this case; the Court having considered the Motion and exhibits attached thereto; the Court having held a hearing with respect to the Debtor's original Motion for Authority to Use Cash Collateral on April 1, 2010, and the Court having entered on that date a final order granting Debtor authority to use cash collateral through June 30, 2010, the Court having considered the testimony presented by the Debtor and considered the statement of counsel for the Debtor, Midwest and all other parties who appeared at the hearing on the Second Motion, the Debtor and Midwest stipulate and the Court finds as follows:

A.   On January 29, 2010, ("Petition Date"), Everflora Chicago, Inc. ("Debtor") filed its voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code ("Code").

- 2 -

The Debtor is currently operating its business as Debtor-in-Possession pursuant to §§ 1107 and 1108 of the Code.

B. Midwest and Debtor are parties to that certain Revolving Credit Agreement dated as of July 6, 2007 (as amended, restated, modified and supplemented from time to time, including by that certain First Amendment to Revolving Credit Agreement dated as of February 13, 2008, that certain Second Amendment to Revolving Credit Agreement dated as of August 1, 2008, and that certain Third Amendment to Revolving Credit Agreement dated as of June 30, 2009, the "Credit Agreement"). The loans to Debtor pursuant to the Credit Agreement are evidenced by a Revolving Credit Note dated as of July 6, 2007 (as amended, restated, modified and supplemented from time to time, including by that certain First Amended and Restated Revolving Credit Note dated as of February 13, 2008, that certain Second Amended and Restated Revolving Credit Note dated as of August 1, 2008, and that certain Third Amended and Restated Revolving Credit Note dated as of June 30, 2009, the "Note").

C. As part of that certain Security Agreement dated as of July 6, 2007 ("Security Agreement"), the Debtor granted a security interest in and lien on any and all property of the Debtor and all proceeds thereof to Midwest.[1] For purposes of this Order, the Credit Agreement, the Note, the Security Agreement and the other agreements, instruments and documents delivered in connection with the loan by Midwest to Debtor shall be referred to collectively as the "Pre-Petition Loan Documents."

D. In order to perfect the liens and security interests described above in paragraph C ("Pre-Petition Collateral"), Lender filed UCC-1 financing statements with the Illinois Secretary of State.

---

[1] The definition is specified at considerable length in the 2007 Security Agreement.

E. As of the Petition Date, pursuant to the Pre-Petition Loan Documents, Midwest asserts that it held, and continues to hold, valid and perfected first priority liens and security interests ("Pre-Petition Liens") in the Pre-Petition Collateral, except insofar as pursuant to non-bankruptcy law such liens were junior to any valid and properly-perfected liens in favor of other entities.

F. On April 1, 2010, this Court entered a Final Order Authorizing the Use of Cash Collateral approving a budget through June 2010, and granting Midwest a replacement lien on all post-petition property of the debtor-in-possession to the same extent and validity as existed pre-petition on post-petition property. The approved budget did not include adequate protection payments to Midwest.

G. Recently the Debtor's outstanding eligible accounts receivable have been significantly reduced because the Debtor's greatest revenue-producing seasons (Valentine's Day and Mother's Day) have passed and sales are down. Accordingly, Midwest's equity cushion has all but disappeared.

H. Midwest is willing to consent to the Debtor's use of accounts receivable, which constitute Midwest's cash collateral ("Cash Collateral"), only on the terms and conditions provided in this Order.

I. The Debtor admits that as of the Petition Date, under the terms of the Pre-Petition Loan Documents, (i) the Debtor was indebted to Midwest, without defense, counterclaim, recoupment or offset of any kind, in the principal amount of no less than $230,000, subject to reconciliation and audit by Debtor, and late fees and interest, if any, plus any additional interest due, taxes, costs, expenses and other charges thereon in respect of loans, advances and other financial accommodations made by the Pre-Petition Loan Documents ("Pre-Petition Obligations") and, (ii) the Pre-Petition Obligations are secured by valid, enforceable and

properly-perfected first priority liens on and security interests in the Pre-Petition Collateral, as defined in the Pre-Petition Loan Documents.

J.   Midwest asserts that it does not control the operations of the Debtor.

K.   The entry of this Order will preserve and maintain the value of the Debtor's assets, will minimize disruption of the Debtor as a going concern, will increase the possibility for successful reorganization and is in the best interest of the Estate. The Debtor does not believe it could continue to manage and operate its business without using the Cash Collateral of Midwest. Accordingly, the Debtor has requested that Midwest allow it continued use of its Cash Collateral.

L.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This cause is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The notice which the Debtor provided of the hearing on this Motion was sufficient and appropriate under the circumstances of this case and satisfies the requirement of Bankruptcy Rule 4001.

**IT IS HEREBY ORDERED** as follows:

1.   **Preamble and Defined Terms**. The foregoing stipulations and findings are hereby restated (and the Debtor confirms the representations made in said stipulations) at this point and incorporated herein by reference, and the Debtor and Midwest hereby consent and stipulate to entry of this Order. Words used herein, whether capitalized or not, shall be construed in accordance with the definitions provided and set forth in the Pre-Petition Loan Documents, as supplemented by the definitions set forth in the Code, including without limitation the definitions contained in § 101 of the Code.

2.   **Authorization to Use Cash Collateral.** The Debtor is hereby authorized to use the Cash Collateral of Midwest, consisting of pre- and post-petition accounts receivable of the Debtor, in the ordinary course of business only, in accordance with the budget attached hereto as Exhibit A, provided, however, that the expenditures of the Debtor for any line item may exceed

the amount budgeted for that line item by a factor of no more than ten percent (10%) of the budgeted amount. The Debtor may carry over any unused portion of the actual expenditures budgeted for a particular line item to a subsequent time period for that line item. Midwest's Cash Collateral shall be used solely for the purpose of operating and maintaining the Debtor's business and as set forth in this Order. The Debtor is authorized to use Cash Collateral of Midwest pursuant to the terms of this Order during time periods subsequent to June 30, 2010, in accordance with budgets to be submitted by the Debtor to Midwest from time to time. Such budget shall be effective seven (7) days after receipt by overnight mail and facsimile to Midwest and by facsimile to Karen Goodman (Fax No. 312-275-7570) unless Midwest objects to such budget in writing before the seventh day following receipt by Midwest.

    3.    **Adequate Protection Payments**. As partial adequate protection for any post-petition diminution in the value of Midwest's interests in the Pre-Petition Collateral, including without limitation for any diminution in value caused by the Debtor's use of the Pre-Petition Collateral, including Cash Collateral as such term is defined in Code 363(a), Midwest is hereby granted valid, binding, enforceable and perfected replacement liens upon all property of the Debtor's Estate and all proceeds, products, rents and profits thereof, upon which Midwest had valid and perfected pre-petition liens and security interests, to the extent of and with the same priority as its valid and perfected pre-petition liens (collectively, the "Replacement Liens" or "Adequate Protection Liens"), subject only to senior valid, binding, enforceable and perfected liens and security interests existing on the Petition Date against such assets in favor of entities other than Midwest. To the extent that the foregoing adequate protection is deemed inadequate, Midwest is also granted an allowed administrative claim in accordance with § 507(b) of the Code having the priority of payment as set forth in § 507(b) of the Bankruptcy Code. As additional adequate protection, the Debtor is authorized to pay and Midwest is entitled to receive

immediately upon the entry of this Order the lump sum payment of $24,597.33 ( less $13,000.00 paid post petition by Debtor to Midwest), representing post-petition interest and attorney's fees and monthly payments for interest and attorney's fees as provided for in this Order and Exhibit A hereto.

4. **Order is Security Agreement**. This Order shall be deemed to be and shall constitute a security agreement under the applicable provisions of the Illinois Uniform Commercial Code ("UCC") in effect from time to time. The security interest and liens granted to Midwest by this Order shall be deemed perfected upon entry of this Order without the necessity of filing or recording by any person of any documents or other instruments otherwise required to be filed under applicable non-bankruptcy law for the protection of security interest or liens, with such validity and perfection being binding upon a successor or any subsequently appointed trustee in any proceedings under any chapter of the Code, and upon any and all of the creditors of the Debtor who have extended or may hereafter extend credit to the Debtor or who assert a claim of any nature of any manner whatsoever in this bankruptcy case or any superseding bankruptcy case of the Debtor, whether or not notice of the filing of this bankruptcy case has been filed in any county, parish or any political or administrative subdivision in which the assets of the Debtor are or may be located. Notwithstanding the foregoing, the Debtor shall execute any other security agreements and supporting documents if requested to do so by Midwest. The Debtor-in-Possession shall cooperate with Midwest in executing such other documentation, including without limitation, new promissory notes, as Midwest deems reasonably necessary to effectuate the terms of this Order.

5. **Application of Proceeds**. Payments received by Midwest pursuant to the budget attached as Exhibit A shall be applied first to interest, charges and fees under the Pre-Petition Loan Documents, and then to principal under the Pre-Petition Loan Documents, to the extent

permitted under 11 U.S.C. § 506(b). The foregoing applications of funds shall be provisional and the appropriateness of any application of funds shall be subject to final determination by the Court. All parties' rights with respect to the appropriateness of such application are fully reserved.

6. **Survival**. The provisions of this Order shall be binding upon and inure to the benefit of the Debtor and Midwest and their respective successors and assigns, retroactively to the Petition Date. The terms of this Order shall be valid and enforceable against any subsequent trustee for the Debtor in reorganization or otherwise. The liens and security interests granted herein shall survive conversion or dismissal of t his case.

7. **Insurance**. The Debtor shall insure the Pre-Petition Collateral for the full insurable replacement value thereof, on substantially the same terms, provisions and conditions provided for in the Pre-Petition Loan Documents, with insurance companies acceptable to Midwest and naming Midwest as lost payee on its collateral on all such policies of insurance. The Debtor will provide Midwest with certificates of insurance evidencing the Debtor's compliance with the insurance requirements provided herein; and Midwest may purchase said insurance and charge the expense thereof to the Debtor if it fails to obtain the insurance as herein provided. Midwest, upon reasonable notice, has the right to audit and examine the Pre-Petition Collateral and the Debtor's books and records at any time during normal business hours.

8. **Plan of Reorganization or Other Subsequent Orders**. The validity, priority and the extent of the liens and security interests granted to Midwest pursuant to the Order shall not be modified, altered or affected in any manner including, without limitation, in a plan of reorganization, absent prior consent of Midwest or the entry of subsequent Order by this Court, after hearing on notice to Midwest.

9. **Additional Duties of Debtor-in-Possession**.  The Debtor shall furnish to Midwest weekly account receivable reports reflecting actual vs. projected cash flow and such other reports as Midwest may reasonably request from time to time.

10. **Events of Default**.  The following events shall be Events of Default under this Order:

   a. spending other than as allowed in the budget attached hereto as Exhibit A and as provided in this Order;

   b. failure to comply with the Additional Duties of Debtor-in-Possession, as listed in paragraph 9 above;

   c. Debtor's failure to comply with any of the other obligations imposed by this Order; and

   d. failure to pay adequate protection payments to Midwest as provided in the budget as set forth in Exhibit A hereto.

11. **Independent Actions**. The Debtor acknowledges that the promises and actions contained here are made and taken of its own free will and volition. In accepting the budget prepared by Debtor as Exhibit A and by taking any other action pursuant to this Order, Midwest asserts that it shall not have any liability to any third party.

12. **Attorney's Fees for Counsel for Midwest**.  Midwest shall be permitted to recover the fees, costs and expenses of counsel to the extent permitted under § 506(b) of the Code, after notice and hearing, subject to Court approval.

13. **Miscellaneous**.

   a. **Force and Effect of Pre-Petition Documents: Conflicts**. Except as modified herein and subject to the other provisions of this Order and the Code, the Pre-Petition Loan Documents shall remain in full force and effect. To the extent there exists any conflict between

the Motion, the Pre-Petition Loan Documents and the terms of this Order, this Order governs and controls.

b. **No Waiver**. This Order shall not constitute a waiver by Midwest of any of its rights under the Pre-Petition Loan Documents, the Code or other applicable law, including, without limitation: (1) its right to later assert that, notwithstanding the terms and provisions of this Order, its interest in the Pre-Petition Collateral lacks adequate protection within the meaning of Code §§ 362(d) or 363(e); or (2) its right to later assert claims under § 507(b) of the Code. The failure by Midwest at any time or times hereafter to require strict performance by the Debtor (or by any trustee) of any provisions of this Order shall not waive, affect or diminish any right of Midwest thereafter to demand strict compliance and performance therewith. No delay on the part of Midwest in the exercise of any right or remedy of any provisions of this Order shall waive, affect of diminish any right of Midwest thereafter to demand strict compliance or performance therewith. None of the rights or remedies of Midwest under this Order shall be deemed to have been suspended or waived by Midwest unless such suspension or waiver is in writing, signed by a duly authorized representative of Midwest and directed to the Debtor specifying such suspension or waiver.

c. **Responsible Person**. By accepting any budget submitted to it by the Debtor and by taking any other actions pursuant to this Order, Midwest asserts that it shall not be (1) deemed to be in control of the operation of the Debtor; or (2) deemed to be acting as a "responsible person" with respect to the operations or management of the Debtor-in-Possession.

d. **Assignment**. Nothing in this Order shall limit the rights of Midwest to assign any of its rights, claims and obligation under the Pre-Petition Loan Documents.

e. **Order**. This Order shall be binding on all parties-in-interest in this case and their respective successors and assigns, including, without limitation, any trustee, except that any

trustee shall have the right to terminate this Order after notice and hearing. If a Trustee terminates this Order, or if any of the provisions of this Order are hereby modified, vacated or stayed by subsequent order, such action shall not affect the priority, validity, and enforceability or effectiveness of any lien, security interest, priority or other benefit authorized hereby with respect to any cash collateral used prior to the effective date of the subsequent order (and all such liens, security interests, priorities and other benefit shall be governed in all respects by the original provisions by this Order). Except as otherwise explicitly set forth in this Order, no third parties are intended to be, or shall be, deemed to be third party beneficiaries of this Order.

DATED: 20 JUL 2010

ENTER:

_____
Honorable Eugene R. Wedoff
U.S. Bankruptcy Judge

AGREED AND STIPULATED TO:

_____
Martin J. Weisenburger
Counsel for Debtor

8620 Wheeler Drive
Orland Park, Illinois 60462
Telephone: 703.403.4470

_____
Karen R. Goodman
Counsel for Midwest Business Credit, LLC

Shefsky & Froelich Ltd.
111 East Wacker Drive, Suite 2800
Chicago, Illinois 60601-3713
Telephone: 312.527.4000
Facsimile: 312.275.7570

1152702_1